

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>LEFEVER MATTSON, a California Corporation, et al.,<br>　　　　　　Debtor. | BAP No. NC-25-1238-BCN<br><br>Bk. No. 24-10545 |
| WILLIAM ANDREW, as the general partner of Live Oak Investments LP,<br>　　　　　　Appellant,<br>v.<br>OFFICIAL COMMITTEE OF UNSECURED CREDITORS; LEFEVER MATTSON INC.,<br>　　　　　　Appellees. | **OPINION** |

Appeal from the United States Bankruptcy Court
for the Northern District of California
Charles D. Novack, Bankruptcy Judge, Presiding

APPEARANCES:

Thomas Philip Kelly, III argued for appellant William Andrew; John Douglass Fiero of Pachulski Stang Ziehl & Jones LLP argued for appellees Official Committee of Unsecured Creditors and LeFever Mattson Inc.

Before: BRAND, CORBIT, and NIEMANN, Bankruptcy Judges.

BRAND, Bankruptcy Judge:

## INTRODUCTION

Appellant William Andrew, the purported general partner of chapter

11[1] debtor Live Oak Investments, LP ("Live Oak LP"), a California limited partnership, appeals an order determining that the limited partners' removal of Live Oak LP's general partner, chapter 11 debtor LeFever Mattson Inc. ("LFM"), and replacement with Mr. Andrew was a violation of the automatic stay in LFM's case and therefore a void act.

We agree with the bankruptcy court and conclude that Cal. Corp. Code §§ 15906.03 and 15906.05, which provide for a general partner's automatic dissociation and termination of management rights upon the general partner's bankruptcy filing, are impermissible *ipso facto* clauses inconsistent with § 541(c)(1)(B). LFM's pre-bankruptcy management rights as general partner of Live Oak LP were not terminated when LFM filed its chapter 11 case and such rights became property of LFM's estate. Consequently, the limited partners of Live Oak LP violated the automatic stay under § 362(a)(3) when they voted to remove, and did remove, LFM as general partner of Live Oak LP. Accordingly, we AFFIRM.

## FACTS

**A.    Background of the debtors**

LFM, a California corporation, invested in various types of real estate, including single family homes, multi-unit residential properties, commercial properties, and vacant land. At the time of the bankruptcy filings, LFM

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Cal. Corp. Code" references are to the California Corporations Code.

directly or indirectly controlled or had ownership interests in approximately 60 limited partnerships and limited liability companies.

Years before Live Oak LP was formed, LFM along with other investors purchased an apartment complex known as Southwood. In 2015, as required to refinance Southwood, LFM and its founder, Kenneth Mattson, formed Live Oak LP and prepared a limited partnership agreement that governed the partnership (the "LPA"). In exchange for a percentage interest in Live Oak LP, the investors transferred their individual ownership interests in Southwood to Live Oak LP. Under the LPA, LFM was designated as General Partner, which elected Mr. Mattson as President. The other investors are Live Oak LP's Limited Partners. Mr. Andrew is one of the Limited Partners.[2]

In August 2024, Southwood was sold for $10.8 million, which resulted in a net amount paid to Live Oak LP of nearly $4 million. About $2.3 million of these proceeds were paid to LFM, which LFM maintained represented its 21.24% ownership interest in Live Oak LP and a 3% sale commission. LFM did not distribute any funds to the Limited Partners. They claim this violated the LPA and was a breach of LFM's fiduciary duties as General Partner of Live Oak LP.

B.    **The bankruptcy filings and stay violation motion**

Shortly after the Southwood sale, LFM filed chapter 11 bankruptcy petitions for itself and its affiliates, including Live Oak LP (collectively, the

---

[2] References to the Limited Partners hereinafter include Mr. Andrew and the other Limited Partners.

"LFM Debtors"). The LFM Debtors' cases are being jointly administered as debtors in possession. An official committee of unsecured creditors ("Committee") for the LFM Debtors was appointed.

One year after the bankruptcy filings, the Limited Partners of Live Oak LP filed a notice of partnership meeting for the purpose of (1) removing LFM as General Partner of Live Oak LP, (2) appointing Mr. Andrew as the new General Partner and President, and (3) authorizing Live Oak LP to retain its own bankruptcy counsel. The Limited Partners held the partnership meeting, with LFM present, and obtained the requisite votes to remove LFM as General Partner. They further appointed Mr. Andrew as the new General Partner and President and approved replacement bankruptcy counsel.

After obtaining standing to prosecute claims on behalf of the LFM Debtors, the Committee moved for an order declaring that the Limited Partners' removal of LFM as General Partner of Live Oak LP was a violation of the automatic stay and void. The Committee argued that LFM's right to participate in the management of Live Oak LP was property of LFM's bankruptcy estate protected by the automatic stay. By ousting LFM as General Partner, it argued, the Limited Partners violated § 362(a)(3), which prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."

The Limited Partners countered that LFM's removal as General Partner of Live Oak LP was not a stay violation. They argued that, under California limited partnership law, LFM was dissociated from Live Oak LP and lost all

right to participate in its management when LFM filed its chapter 11 case. Consequently, they argued, LFM's management rights did not become property of its estate, and so no automatic stay could or did apply. In reply, the Committee argued that the California limited partnership statutes relied upon by the Limited Partners were impermissible *ipso facto* clauses inconsistent with § 541(c)(1)(B) and violative of the Supremacy Clause.

After a hearing, the bankruptcy court entered an order granting the Committee's motion, concluding that removal of LFM as General Partner of Live Oak LP violated the automatic stay in LFM's case and was a void act. The court determined that LFM's pre-bankruptcy partnership rights and duties, including its management rights as General Partner, were property of LFM's estate, and that the California statutes providing for a general partner's automatic dissociation and loss of management rights upon the general partner's bankruptcy filing were impermissible *ipso facto* clauses inconsistent with § 541(c)(1)(B) and violative of the Supremacy Clause, U.S. Const. art. VI, cl. 2. This timely appeal followed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1.     Did the bankruptcy court err in determining that LFM had pre-bankruptcy management rights as General Partner of Live Oak LP that became property of LFM's estate?

2.	Did the bankruptcy court err in determining that the California limited partnership statutes are preempted by the Bankruptcy Code?

3.	Did the bankruptcy court err when it determined that removal of LFM as General Partner of Live Oak LP violated the automatic stay?

## STANDARDS OF REVIEW

"Whether state law is preempted by the Bankruptcy Code is a question of law we review de novo." *Steward Fin., LLC v. Bral (In re Bral)*, 622 B.R. 737, 742 (9th Cir. BAP 2020) (citing *MSR Expl., Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910, 912 (9th Cir. 1996)). Whether property is property of the estate is a question of law we review de novo. *Fursman v. Ulrich (In re First Prot., Inc.)*, 440 B.R. 821, 826 (9th Cir. Cir. 2010) (citing *Cisneros v. Kim (In re Kim)*, 257 B.R. 680, 684 (9th Cir. BAP 2000)). A bankruptcy court's determination of whether the automatic stay was violated is a question of law we review de novo. *Yellow Express, LLC v. Dingley (In re Dingley)*, 514 B.R. 591, 595 (9th Cir. BAP 2014), *aff'd on other grounds*, 852 F.3d 1143 (9th Cir. 2017).

When we review a matter de novo, we give no deference to the bankruptcy court's decision. *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

## DISCUSSION

The question before us is whether LFM's management rights as General Partner of Live Oak LP became property of the estate such that the Limited Partners' removal of LFM as General Partner violated the automatic stay in LFM's case. As part of that analysis, we must determine whether certain

6

California limited partnership statutes are preempted by the Bankruptcy Code. This is an issue of first impression in this circuit, and the California Supreme Court has not decided it. We conclude that the pertinent California statutes are impermissible *ipso facto* clauses preempted by the Bankruptcy Code, that LFM's pre-bankruptcy management rights became property of its estate, and that the Limited Partners violated the automatic stay when they voted to remove, and did remove, LFM as General Partner of Live Oak LP.

**A.** **LFM had pre-bankruptcy management rights as General Partner of Live Oak LP that became property of LFM's estate.**

LFM's filing of its chapter 11 petition created a bankruptcy estate by operation of law. § 541(a). Property of the estate includes "all legal and equitable interests of the debtor in property as of the commencement of the case." § 541(a)(1). The scope of § 541(a)(1) is intended to be broad. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 & n.9 (1983).

While § 541(a) provides whether a particular interest of the debtor is "property of the estate," the nature and extent of that interest is defined by state law. *Butner v. United States*, 440 U.S. 48, 55 (1979); *see Miller v. Bill & Carolyn Ltd. P'ship (In re Baldwin)*, 463 B.R. 142, 2006 WL 2034217, at *2 (10th Cir. BAP July 11, 2006) (table) (stating that, although state law determines the nature of a debtor's limited partnership interest, federal law determines the extent to which that partnership interest becomes part of the estate), *aff'd*, 593 F.3d 1155 (10th Cir. 2010). In other words, "[a] debtor's pre-bankruptcy rights in property are determined according to state law." *In re Envision Healthcare*

7

*Corp.*, 655 B.R. 701, 711 (Bankr. S.D. Tex. 2023) (citing *Butner*, 440 U.S. at 55). But "[w]here state and federal law directly conflict, state law must give way." *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 617 (2011); *see Dunkley v. Rega Props., Ltd. (In re Rega Props., Ltd.)*, 894 F.2d 1136, 1139 (9th Cir. 1990) (stating that state law is the "starting point" but bankruptcy courts must "supersede state law where it conflicts with the federal bankruptcy law which the court is primarily bound to enforce.") (citation omitted); *B-Real, LLC v. Chaussee (In re Chaussee)*, 399 B.R. 225, 230 (9th Cir. BAP 2008) (stating that federal preemption applies when state law interferes with or is contrary to federal law).

Because Live Oak LP was formed in California, we examine California law to determine whether LFM had any legal or equitable interest in the right to manage Live Oak LP. Limited partnerships are governed by the California Uniform Limited Partnership Act of 2008, Cal. Corp. Code §§ 15900 et seq.[3] Cal. Corp. Code § 15904.06 provides that "[e]ach general partner has equal rights in the management and conduct of the limited partnership's activities." Cal. Corp. Code § 15906.05(a)(1) provides for the termination of this management right upon a general partner's bankruptcy filing. Thus, although disputed by the Limited Partners, California has created a statutory management interest for a general partner in a limited partnership.

---

[3] The parties have continued to cite to the statutes governing "general" partnerships, Cal. Corp. Code §§ 16100 et seq. The bankruptcy court contributed to this error to an extent. However, any potential error was harmless since the general and limited partnership statutes are similar and the court reached the correct result.

Further, Cal. Corp. Code § 15901.10(a) provides, in relevant part, that "the partnership agreement governs relations among the partners and between the partners and the partnership." As a result, we also look to the LPA to determine the rights and interests of the partners. LFM's management rights are found in Article 5.1 of the LPA, which states: "The business of the Partnership shall be managed by the General Partner. . . . The General Partner alone shall have all decision making authority with respect to the Partnership, including but not limited to any action or decision in connection with financing or refinancing of the Property." Under California law, a partnership agreement is an enforceable contract, and a contract right is "property." *See Sharfman v. State*, 253 Cal. App. 2d 333, 337 (1967) (a partnership agreement is a contract); *see also Shin v. Altman (In re Altman)*, BAP No. CC-17-1277-KuLS, 2018 WL 3133164, at *5 (9th Cir. BAP June 26, 2018) (observing that California LLC operating agreements are enforceable contracts and that a contract right is "property" under California law, citing Cal. Civ. Code §§ 654 and 1549).

Therefore, LFM's pre-bankruptcy rights included, among other things, its statutory and contractual right to manage Live Oak LP. Prepetition contract rights are property of the estate. *In re Altman*, 2018 WL 3133164, at *5 (determining that debtor's right to manage his California LLC was a contract right under the operating agreement and was therefore property of the estate). The Limited Partners argue that an individual partner's property interests consist only of that partner's "transferable interest" in the

9

partnership, which under Cal. Corp. Code § 15901.02(ak) includes only the partner's right to distributions. Cal. Corp. Code § 15907.01 further provides: "The only interest of a partner which is transferrable is the partner's transferable interest. A transferable interest is personal property." The Limited Partners interpret the extent of a partner's interest in a California limited partnership too narrowly. Just because a general partner's management rights are not "transferrable" does not mean that such rights do not exist or are not a property interest of that partner.

LFM held management rights as General Partner of Live Oak LP when LFM filed its chapter 11 case, and those rights became property of its estate.

**B.    Cal. Corp. Code §§ 15906.03 and 15906.05 are preempted by the Bankruptcy Code.**

The Limited Partners argue that LFM's management rights did not become property of the estate because LFM dissociated from Live Oak LP once LFM filed its chapter 11 case. Cal. Corp. Code § 15906.03 provides that "[a] person[4] is dissociated from a limited partnership as a general partner upon the occurrence of" the person's "becoming a debtor in bankruptcy." Cal. Corp. Code § 15906.03(f)(1). In addition, Cal. Corp. Code § 15906.05 provides: "(a) Upon a person's dissociation as a general partner all of the following apply: (1) The person's right to participate as a general partner in the management and conduct of the partnership's activities terminates." Cal.

_____

[4] "Person" is defined as "an individual, partnership, limited partnership, trust, estate, association, corporation, limited liability company, or other entity, whether domestic or foreign." Cal. Corp. Code § 15901.02(y).

10

Corp. Code § 15906.05(a)(1). The Committee counters that these California statutes are impermissible *ipso facto* clauses that are inconsistent with § 541(c)(1)(B) and thus violative of the Supremacy Clause.

Section 541(c)(1)(B) states, in relevant part:

> an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any . . . applicable nonbankruptcy law . . . that is conditioned on . . . the commencement of a case under this title . . . and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

Thus, § 541(c)(1)(B) makes plain that the bankruptcy estate is vested with all of the debtor's interest in property despite any applicable nonbankruptcy (i.e., state or contractual) laws effecting a termination of the debtor's interest upon filing.[5] Put simply, "parties cannot contract around what becomes estate property, and states cannot legislate estate property away." *In re Envision Healthcare Corp.*, 655 B.R. at 710. Further, given the automatic and immediate creation of an estate upon a bankruptcy filing, "[t]here is no metaphysical moment in time for state law to alter or modify any prepetition legal rights between the filing of the petition and creation of the estate." *Id.* at 711.

Cal. Corp. Code §§ 15906.03 and 15906.05 effectuate an automatic "dissociation" of a general partner from a limited partnership and terminate the general partner's right to participate in the management of the limited partnership upon the general partner's bankruptcy filing. Section 541(c)(1)(B)

---

[5] The parties agree that the LPA does not contain any *ipso facto* clauses with respect to a bankruptcy filing.

11

squarely precludes that result, and we hold that these *ipso facto* clauses are preempted by the Bankruptcy Code. Many courts have reached the same conclusion with respect to similar nonbankruptcy law provisions. *See In re Envision Healthcare Corp.*, 655 B.R. at 710-11 (interpreting Delaware law provisions that an LLC member dissociates and forfeits management rights in the LLC upon a bankruptcy filing as impermissible *ipso facto* clauses in light of § 541(c)(1)(B) that had to give way to the Supremacy Clause, and determining that debtor's LLC management rights were property of the estate); *Off. Comm. of Unsecured Creditors v. Va. Broadband, LLC (In re Va. Broadband, LLC)*, 498 B.R. 90, 94-96 (Bankr. W.D. Va. 2013) (holding that Virginia law provisions terminating an LLC member's noneconomic interest upon a bankruptcy filing were invalidated by § 541(c)(1)(B) and such interest was property of the estate); *In re Pickel*, 487 B.R. 289, 292 (Bankr. D.N.M. 2013) (interpreting Virgin Islands law provisions that an LLC member dissociates and can no longer participate in management upon a bankruptcy filing as not valid in light of § 541(c)(1)); *Duncan v. Dixie Mgmt. & Inv., Ltd. Partners (In re Dixie Mgmt. & Inv., Ltd. Partners)*, 474 B.R. 698, 701 (Bankr. W.D. Ark. 2011) (holding that Arkansas law and operating agreement provisions terminating a member's interests in an LLC upon a bankruptcy filing were ineffective *ipso facto* clauses preempted by the Bankruptcy Code and that debtor's LLC membership interest was property of the estate under § 541(c)(1)(B)); *Lahood v. Covey (In re Lahood)*, 437 B.R. 330, 334-36 (Bankr. C.D. Ill. 2010) (holding that Illinois law and operating agreement provisions that an LLC member

12

dissociates and forfeits right to participate in management upon a bankruptcy filing were unenforceable per § 541(c)(1)); *Klingerman v. ExecuCorp, LLC (In re Klingerman)*, 388 B.R. 677, 678-79 (Bankr. E.D.N.C. 2008) (holding that North Carolina law and operating agreement provisions that a member's LLC membership ceases upon a bankruptcy filing conflicted with § 541(c)(1), and that debtor-member's noneconomic interests in LLC became property of the estate). *See also Kerry v. Schneider*, 239 F.2d 896, 898 (9th Cir. 1956) (stating, without analysis, that the trustee possesses all of a debtor-partner's property rights in the partnership including management rights). *But see Spain v. Williams (In re Williams)*, 455 B.R. 485, 501-02 (Bankr. E.D. Va. 2011) (reviewing same Virginia law as in *Virginia Broadband, LLC, supra*, and holding that debtor-member's noneconomic LLC interests did not become property of the estate, only his economic interest did).

The Limited Partners argue that three California bankruptcy cases compel a different result: *Johnson v. Johnson*, 1:15-cv-01793 MJS, 2016 WL 1138178, at *5 (E.D. Cal. Mar. 23, 2016); *Mansdorf v. Epps*, No. C 10-03036 RS, 2011 WL 13263360, at *1 (N.D. Cal. Aug. 1, 2011); and *Fotouhi v. Mansdorf*, 427 B.R. 798, 802 (N.D. Cal. 2010). They argue that in each case the court considered the pertinent California statutes and determined that the partner was automatically dissociated as a matter of law upon filing a bankruptcy petition. The Limited Partners overstate the holdings of these cases. None analyzed or dealt directly with the question of whether the pertinent partnership statutes are impermissible *ipso facto* clauses inconsistent with

13

§ 541(c)(1). They simply made blanket statements on what apparently was an unopposed fact about a partner's dissociation. As a result, we find these cases distinguishable and of little use in our analysis of this issue.[6] The Limited Partners cite no other relevant cases to support their position.

The Limited Partners further assert that cases involving LLCs are neither on point nor controlling. Regrettably, there is a dearth of case law dealing squarely with this issue involving partnerships, limited or otherwise. The vast majority involve LLCs. However, for our purposes here, this is a distinction without a difference. In the above cases, virtually every court determined that similar state law or contractual provisions terminating an LLC member's management interest due solely to a bankruptcy filing ran afoul with § 541(c)(1) and were preempted by the Bankruptcy Code. We see no logical reason why the result should be any different in a partnership case.

The Limited Partners also argue that the LPA is a non-assumable and non-assignable executory contract, and therefore the *ipso facto* clauses are enforceable, and so LFM's management rights under the LPA did not become estate property. *See* §§ 365(c)(1), 365(e)(2). The bankruptcy court did not decide the executory contract issue. Although the nature of an executory contract is ordinarily a factual issue not generally addressed in the first instance on appeal, whether a non-assumable executory contract becomes property of the estate is purely a question of law, so we will address it. *See*

---

[6] Further, *Mansdorf v. Epps* involved the same debtor law partner as in *Fotouhi v. Mansdorf*, so in *Epps* the district court was repeating what was already undisputed in the record from *Fotouhi*.

*Dumont v. Ford Motor Credit Co. (In re Dumont)*, 581 F.3d 1104, 1116 (9th Cir. 2009) (we may consider an issue raised for the first time on appeal if it is purely one of law and the opposing party will not be prejudiced). The Limited Partners are wrong as a matter of law.

Even assuming the LPA is a non-assumable and non-assignable executory contract, the argument that LFM's management rights thereunder did not become property of the estate was expressly rejected by the Ninth Circuit Court of Appeals in *Computer Communications, Inc. v. Codex Corp. (In re Computer Communications, Inc.)*, 824 F.2d 725 (9th Cir. 1987). There, the Circuit Panel held that an executory contract, regardless of whether it is assumable or assignable, is property of the estate protected by the automatic stay. *Id.* at 729-31 (holding that even if § 365(e)(2) and state law allowed creditor to terminate a non-assumable personal services contract, such contract was property of the chapter 11 debtor's estate pursuant to § 541(c)(1), and creditor violated the automatic stay under § 362(a)(3) by unilaterally terminating it postpetition). To hold otherwise would allow parties, rather than the bankruptcy court, to determine the executory nature of a contract and what rights did or did not become estate property. *See also Ulrich v. Walker (In re Boates)*, 554 B.R. 472, 474 (9th Cir. BAP 2016) (stating that debtor's prepetition contract rights are property of the estate "regardless of whether the rights are associated with an executory or non-executory contract."); *Olson v. Bay Area Foreclosure Invs., LLC (In re Olson)*, BAP No. EC-05-1368-SJB, 2006 WL 6811004, at *6 (9th Cir. BAP Nov. 21, 2006) (stating that a debtor's interest in

15

an executory contract is estate property protected by the automatic stay) (citing *In re Computer Commc'ns, Inc.*, 824 F.2d at 730 and § 541(a)(1)), *aff'd*, 276 F. App'x 641 (9th Cir. 2008).

## C.      The Limited Partners' removal of LFM as General Partner of Live Oak LP violated the automatic stay.

When LFM filed its chapter 11 case, not only did it create an estate that included its statutory and contractual management rights in Live Oak LP, it invoked the protections of the automatic stay and enjoined the enforcement of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." § 362(a)(3). Acts which violate the automatic stay are void as a matter of law. *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 571 (9th Cir. 1992).

At minimum, the Limited Partners' actions of voting to remove, and removing, LFM as General Partner of Live Oak LP and replacing LFM with Mr. Andrew as the new General Partner and President constituted acts "to exercise control over property of the estate" in violation of § 362(a)(3).[7] *See In re Envision Healthcare Corp.*, 655 B.R. at 711-12 (holding that debtor-member's LLC management rights were estate property and postpetition amendment of operating agreement to reflect otherwise and without debtor-member's

---

[7] The Limited Partners argue that LFM's removal was valid and outside the automatic stay because cause existed to remove LFM as General Partner due to LFM's prepetition breach of the LPA. We do not address this argument. The issue of whether LFM breached the LPA has not been determined by the bankruptcy court. Indeed, the court expressly stated that it was not deciding whether cause existed to remove LFM based on its alleged breach of the LPA.

vote violated the automatic stay under § 362(a)(3)); *In re Johnson*, 565 B.R. 835, 841-42 (Bankr. S.D. Ohio 2017) (holding that debtor-partner's economic and noneconomic partnership interests were estate property, and that the partners' postpetition partnership meeting voting to dissociate the debtor-partner and remove him as managing partner and electing a new managing partner violated the automatic stay as acts "to exercise control over property of the estate" under § 362(a)(3)). Hence, the Limited Partners' acts were void.

## CONCLUSION

The bankruptcy court did not err when it determined that Cal. Corp. Code §§ 15906.03 and 15906.05 are preempted by § 541(c)(1)(B). It also did not err when it determined that LFM held pre-bankruptcy management rights in Live Oak LP which became property of LFM's estate, and that the Limited Partners' removal of LFM as General Partner of Live Oak LP violated the automatic stay and was a void act. Accordingly, we AFFIRM.